**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRET ROBERT OSBORN, MICHAEL PRAFF, KATHLEEN ANN PRAFF, and MARTY GAYLE OSBORN, on behalf of themselves, the general public, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EMC CORPORATION, and Does 1 through 50,<br><br>Defendants.<br>_____ / | No. C 04-00336 JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

Now before the Court are the cross-motions for summary judgment filed by Defendant EMC Corp. ("EMC") and Plaintiffs Bret Robert Osborn, Michael Praff, Kathleen Ann Praff, and Marty Gayle Osborn, on behalf of themselves, the general public, and all others similarly situated ("Plaintiffs"). Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS EMC's motion for summary judgment and DENIES Plaintiffs' cross-motion for summary judgment.

**FACTUAL BACKGROUND**

Plaintiffs Bret Robert Osborn, Michael Praff, Kathleen Ann Praff, and Marty Gayle Osborn were salespersons, or the spouse of salespersons, for EMC, and are suing on behalf of themselves and all other EMC's salespersons, and spouses of salespersons, who worked in

California from July 1999 to the present to recover commissions that EMC charged back.[1] In essence, the key dispute between the parties is whether the commissions that EMC charged back were "advances" or "wages."

EMC's California sales representatives currently earn a base salary, separate from commissions, of between $65,000 and $95,000 a year. (Declaration of Jack Lane ("Lane Decl."), ¶ 5.) EMC's California sales managers currently earn a base salary of between $80,000 and $125,000 a year. (*Id*.) EMC pays the base salary regardless of the amount of sales each sales representative or manager makes and the base salary is not subject to chargebacks. (*Id*.) EMC issues written sales compensation plans annually. These plans establish the terms and conditions for earning commissions, as well as the schedule of payments and chargebacks to EMC salespersons. (*Id*. at ¶ 6.) All EMC sales employees, including the named Plaintiffs, acknowledge in writing their acceptance of these terms and conditions by signing a Goal Acknowledgment Form at least once a year. (*Id*.; Declaration of Howard C. Hay ("Hay Decl."), ¶¶ 12-13.)

The applicable plans each specify that commissions are not earned until EMC collects upon the invoices, i.e. the customers have paid for the products and services. (Lane Decl., Exs. 2, 3; Hay Decl., Exs. C-J.) Although the commissions are not earned until the customers pay, the plans provide that EMC will give the salespersons fifty percent of their anticipated commissions as an "advance" when EMC issues an invoice to the customers. (*Id*.) However, the plans further provide that if the customers do not actually pay, and the full amount of the invoices are not collected, the advanced commissions shall be returned to EMC. (*Id*.)

EMC salespersons' responsibilities continue after they execute an agreement with the customers. Such post-booking responsibilities included assisting EMC with collections. (Hay Decl., Exs. A (Deposition of Bret Robert Osborn) at 151:13-19, 152:9-12 and B (Deposition of Michael Pfaff) at 56:18-24.) Michael Pfaff testified that it was "absolutely" part of his job as a

---

[1] The cross-motions do not address the salespersons who were paid commissions based on lease transactions. Plaintiffs' claims related to the lease transactions were settled by the parties and are addressed in the parties' joint motion for preliminary approval of class action settlement regarding "lease claims" asserted in this matter.

sales representative to help EMC collect the money owed by customers. (Hay Decl., Ex. B at 56:18-24.)

Former EMC employees signed releases in exchange for additional payments when they left EMC. (Hay Decl., Ex. M.; Lane Decl. at ¶ 9.)

## ANALYSIS

### A.  Legal Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### B.  Chargebacks Of Advanced Commissions Against Future Commissions Are Not Unlawful.

Plaintiffs contend that charging back advanced commissions against future advances violates California Labor Code §§ 221, 300, 400-410, and is unconscionable. EMC, on the other hand, contends that the chargebacks were lawful because they were made pursuant to an

3

agreement between the parties and were taken against other advances, as opposed to wages. The Court finds that EMC's position is in accord with California law.

### 1.  Labor Code § 221

California Labor Code § 221 provides that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." The California Court of Appeal recently examined the issue and determined that an employer who provided advances on commissions before all the conditions for earning such commissions had been met was merely providing advances, and not wages, because the commissions had not yet been earned. Thus, chargebacks against such advances did not violate the provisions of the California Labor Code. *Steinhebel v. Los Angeles Times Communications*, 126 Cal. App. 4th 696 (2005). The Court finds the reasoning in *Steinhebel* persuasive.[2]

Section 221 only "prohibits an employer from collecting or receiving wages that have already been earned by performance of agreed-upon requirements." *Steinhebel*, 126 Cal. App. 4th at 707. Giving salespersons a portion of anticipated commissions before they have been actually earned does not make them "wages." Notably, Section 221 was adopted to further two related policy interests: (1) to prohibit an employer from making secret deductions or "kick-backs" which made it appear as though the employer was paying what was provided by a collective bargaining contract or statute, when the employer was actually paying less and (2) to protect the employee's reliance on receiving his or her expected wage and the employee's

---

[2] The cases Plaintiffs rely upon to argue the chargebacks are unlawful are inapposite. *See Kerr's Catering Service v. Dept. of Industrial Relations*, 57 Cal. 2d 349 (1962); *Quillian v. Lion Oil Co.*, 96 Cal. App. 3d 156 (1979); *Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109 (1995); *Ralphs Grocery Co. v. Superior Court*, 112 Cal. App. 4th 1090 (2003). These cases all relate to an employer's deductions from wages for cash or merchandise shortages or other general business losses, which are not at issue here. The courts in both *Kerr's* and *Ralphs* relied on specific Industrial Welfare Commission orders prohibiting reductions from wages for cash shortages unless those shortages were caused by the employee's dishonest or willful acts. *Kerr's*, 57 Cal. 2d at 330; *Ralphs*, 112 Cal. App. 4th at 1105. These regulations do not apply to EMC's salespersons. Moreover, the losses for which the employers made deductions in those cases were based on transactions in which the employees were not involved; the employees did not cause the losses, nor did they obtain any benefit from the transactions. In fact, in *Hudgins*, the court indicated that the employers' practice of deducting "identified returns" from the commissions of the salesperson who made a particular sale was lawful because those chargebacks were specifically tied to the sales in which identifiable sales associates were involved and had received a direct benefit from the commission on a sale that had been rescinded. *Hudgins*, 34 Cal. App. 4th at 1122.

dependence on receiving wages for the necessities of life. *Kerr's*, 57 Cal. 2d at 328-9; *Hudgins*, 34 Cal. App. 4th at 1118-19. Neither of these two underlying policy concerns are undermined by the sales agreements at issue here. These agreements set out in clear language, agreed to by both the employer and the employees, that the commissions are not earned until EMC collects on the invoices from the customers. (Lane Decl., Exs. 2, 3; Hay Decl., Exs. C-J.) There is nothing secretive or unanticipated about the chargebacks for advances on commissions that are not actually earned. Moreover, the sales representatives and managers received sufficient base salaries, which are not subject to the chargebacks, to cover the necessities of life.

Agreements which condition commissions upon receipt of payments by customers have been upheld by California courts. *Korry of California v. Lefkowitz*, 131 Cal. App. 2d 389, 393 (1955) (upholding recovery of excess advances over earned commissions where agreement specifically provided employee would have weekly advance that would be charged against his commissions); *see also American Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1395 (1996); *Powis v. Moore Machinery Co.*, 72 Cal. App. 2d 344, 354 (1945). As one California court explained, "it is clearly the law in California that a salesman is required to repay the excess of advances made over commissions earned when there is an express agreement on the part of the salesman to repay such excess." *Agnew v. Cameron*, 247 Cal. App. 2d 619, 622 (1967).[3] In *Powis*, the Court upheld the agreement, reasoning that "[i]t was not illegal to provide that commissions would be paid when and if the goods were delivered and paid for. The fact that the defendant was generous with plaintiff, while he was its employee, and paid his commissions before the goods were delivered ... is not a sufficient basis to justify a conclusion that the contract is invalid and void." *Powis*, 72 Cal. App. at 354.

The Division of Labor Standards Enforcement ("DLSE") has also taken the position that commissions are not yet "earned," and thus, not due and payable, until all the reasonable conditions precedent of the employment agreement have been met. (Declaration of Micheline

---

[3] In fact, at the hearing on the parties' cross-motions, Plaintiffs conceded that there is nothing inherently illegal with an employer charging back advanced commissions, but merely argued that an employer should comply with the requirements of California Labor Code § 300 before doing so. However, as discussed below, the Court finds Section 300 to be inapplicable.

5

1  N. Fairbank, Ex. T (DSLE Opinion Letter, January 9, 2002).)  The DSLE expressly provides in
2  its manual that commissions may be conditioned upon receipt of payment and that the
3  commissions may be subject to chargebacks if the goods are returned.  *See* DLSE's Enforcement
4  Policies and Interpretations Manual, dated June 2002, § 34.3.1 ("Computation of commissions
5  frequently relies on such criteria as the date the goods are delivered or the payment is received.
6  Sometimes, the commission of the selling salesperson is subject to reconciliation and
7  chargebacks if the goods are returned.  If these conditions are clear and unambiguous, they may
8  be utilized in computing the payment of the commissions.")

9        In addition to allowing commissions to be conditioned upon receipt of customer
10  payments when there are clear agreements imposing such terms, courts have allowed such
11  conditions where salespersons have continuing obligations after a customer places an order or
12  agrees to a sale.  *American Software*, 46 Cal. App. 4th at 1393 (noting that contracts
13  conditioning commissions upon receipt of customer payments are "commonplace" with sales
14  representatives who have ongoing responsibilities to service accounts after the sales are made);
15  *see also Prudential Ins. Co. of America v. Fromberg*, 240 Cal. App. 2d 185, 191-92 (1966).

16        Here, the chargebacks satisfy both of these contingencies.  EMC charges back the
17  advanced commissions pursuant to written agreements between the parties that provide
18  commissions are not earned until EMC collects on the invoices.  (Lane Decl., Exs. 2, 3; Hay
19  Decl., Exs. C-J.)  Moreover, the salespersons had continuing obligations after the customers
20  signed the contracts.  For example, the sales representatives were required to assist EMC in
21  collecting payments from the customers.  (Hay Decl., Exs. A (Osborn Depo.) at 151:13-19,
22  152:9-12 and B (Pfaff Depo.) at 56:18-24.)  In fact, Plaintiffs concede that EMC's sales
23  representatives were obligated to assist EMC with collection efforts, but argue that these
24  "obligations" were not integral to their jobs because they were not specifically enumerated in
25  their job descriptions.  (Plaintiffs' Opp. Br. at 9; *see also* Plaintiffs' Br. at 7 ("Plaintiffs were
26  certainly asked to assist in collections of delinquent accounts, and Plaintiffs certainly felt a
27  certain financial interest (to avoid a chargeback or regain charged back wages) to pursue
28  collection efforts as requested by the Defendant.").)  However, EMC's job description for

account executives provides that the position is responsible for "continued account penetration and customer satisfaction" and "maintains high level, executive contact with accounts, focusing on the establishing and maintenance of strategic relationships." (*See* Fairbank Decl., Ex. L.) EMC's job description for Area Sales Manager provides that the principal duties and responsibilities include "[m]aintain[ing] contact and rapport with employees, customers, and prospects within assigned areas." (*See* Fairbank Decl., Ex. M.) These descriptions could be read to include obligations to continue to work with EMC's customers after they agreed to a sale and are insufficient to contradict the evidence cited by EMC demonstrating that the sales representatives were obligated to assist with collections.

The Court thus concludes that EMC's chargebacks do not violate Section 221.

### 2. Labor Code § 300

Labor Code § 300 prohibits "assignments of wages" unless certain requirements are met, such as having the assignment in writing and signed by the person who earned the wages or salary. Cal. Labor Code § 300(b). Plaintiffs argue that the advances are "assignments" under California Labor Code § 300, and thus, must satisfy the requirements of this provision. However, Plaintiffs have not demonstrated that the advances qualify as "assignments." Both parties rely on the definition of "assignment" in Black's Law Dictionary to argue that the advances are or are not assignments. Black's Law Dictionary defines an "assignment" as "the transfer of rights or property." *Black's Law Dictionary* 115 (7th ed. 1999). Pursuant to the sales compensation agreements, the salesepersons do not earn the commissions until EMC collects on the invoices from the customers. (Lane Decl., Exs. 2, 3; Hay Decl., Exs. C-J.) Merely providing the salespersons a portion of the commissions before they were earned does not automatically create rights or an entitlement to retain the funds. Plaintiffs have not provided any authority demonstrating otherwise. Accordingly, the Court concludes that Section is not applicable, and that therefore, EMC does not have any obligation to comply with its requirements with respect to the advances and chargebacks.

### 3. Labor Code §§ 400-410

"Labor Code sections 400 through 410 set out in detail the employee's bond law, and the manner in which a cash bond may be exacted from an employee to cover merchandise entrusted to him." *Quillian*, 96 Cal. App. 3d at 162. It is unclear, and Plaintiffs have not demonstrated how, these provisions are applicable to the chargebacks on advances on commissions where EMC is not making deductions based on merchandise shortages. Accordingly, the Court finds that these provisions are not applicable to the advances and chargebacks. *See Steinhebel*, 126 Cal. App. 4th at 710-11 (holding chargebacks do not violate Labor Code sections 400 through 410).

### 4. The Compensation Plans Are Not Unconscionable

Plaintiffs also contend that the chargeback provisions of the agreements are unconscionable and, therefore, are unenforceable. To find a contract unenforceable on the grounds of unconscionability a court must find the contract to be both procedurally and substantively unconscionable. *American Software*, 46 Cal. App. 4th at 1390. "Substantive unconscionability focuses on the actual terms of the contract, while procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the parties.... Indicia of procedural unconscionability include 'oppression, arising from inequality of bargaining power and the absence of real negotiation or a meaningful choice' and 'surprise, resulting from hiding the disputed term in a prolix document.'" *Id.* at 1390-91. Substantive unconscionability is generally indicated by contract terms that are so one-sided they "shock the conscience." *Id.* at 1391. Although both procedural and substantive unconscionability are required, "[s]ome courts have indicated that a sliding scale applies – for example, a contract with extraordinarily oppressive substantive terms will require less in the way of procedural unconscionability." *Id.* at 1390.

Here, to demonstrate substantive unconscionability, Plaintiffs primarily rely on their argument that the advances were earned wages, and thus, the chargebacks violated the California Labor Code. However, the Court has already rejected this argument. Plaintiffs also argue, but provide no supporting evidence, that they and the putative class members were

"genuinely surprised" regarding the terms of the contract and the chargeback provisions. (Plaintiffs' Br. at 18.) On other hand, EMC presents evidence demonstrating Plaintiff were aware of, and thus, not "surprised" by the chargeback provisions. (Hay Decl., Exs. A (Osborn Depo) at 18:6-9 and B (Pfaff Depo) at 31:21-32:3; *see also* Fairbank Decl., Ex. O (Osborn Depo.) at 65:1-8.) Given that chargeback provisions in sales agreements are common and that courts have upheld such provisions, the Court concludes that the contract terms that are not so one-sided that they "shock the conscience."

In *American Software*, the court found a contract under which commissions otherwise earned were forfeited thirty days after the salesperson stoped working for the company was not procedurally unconscionable where the employee was aware of the terms of the contract and voluntarily agreed to assume them. *Id*. at 1391. Moreover, the court found that "as a salesperson it [was] reasonable to assume [the employee] had become familiar with contracts and their importance." *Id*. The court further noted that the terms in the contract were straightforward and easily understood. *Id*. at 1391-92. Thus, the court found it "a far cry from those cases where fine print, complex terminology, and presentation of a contract on a take-it-or-leave-it basis constitutes the groundwork for a finding of unconscionability." *Id*. at 1392.

Here, the only evidence submitted by Plaintiffs to demonstrate procedural unconscionability is that one salesperson was not able to negotiate different terms of the sales compensation plans that he worked under. (Declaration of Michael Pfaff at ¶ 5.)[4] In light of the fact that as salespersons it is reasonable to assume that they had become familiar with contracts and their importance, *see American Software*, 46 Cal. App. 4th at 1390, and that here, Plaintiffs were in fact aware of the chargeback provisions, and that the terms in the sales commissions

---

[4] Plaintiffs also cite to the deposition of Bret Osborn, but a review of the deposition transcript cited to by Plaintiffs reveals that it does not actually support Plaintiffs' argument. Osborn testified as follows:
   Q: So you knew that the plan said, during 2000, quote, "Commissions are earned at collection," end quote?"
   A: Like I said previous to that, I signed the plan, so by default, I'm acknowledging that, but I can't tell you that I read this through and through."
   Q: Okay.
   A: I certainly understood that one.
(Fairbank Decl., Ex. O (Osborn Depo.) at 65:1-8.)

9

1  plans were straightforward and easy to comprehend, the Plaintiffs' evidence is insufficient to
2  demonstrate procedural unconscionability.  This Court finds that these agreements are "a far cry
3  from those cases where fine print, complex terminology, and presentation of a contract on a
4  take-it-or-leave-it basis constitutes the groundwork for a finding of unconscionability."  *Id*. at
5  1392.

6       Due to the lack of either substantive or procedural conscionability, the Court concludes
7  that the chargeback provisions are not unconscionable.

8  **C.    The Releases Are Valid**

9       EMC's also moves for summary judgment on the issue of the releases signed by Osborn
10 and other purported class members.  EMC argues that the releases included valid waivers of any
11 claims related to the chargebacks, and thus, Osborn and all other purported class members who
12 signed similar releases are not entitled to any relief.  In opposition, Plaintiffs argue that the
13 advanced commissions were wages, and thus, pursuant to California Labor Code § 206.5, claims
14 regarding these commissions may not be waived.  However, the Court has rejected Plaintiff's
15 argument, and found that the payments were merely advances.  Accordingly, § 206.5 does not
16 preclude EMC's salespersons from signing a release waiving their rights and claims to such
17 advances.

18      Plaintiffs further argue the general release does not extend to unknown claims under
19 California Civil Code § 1542.  In *Jefferson v. California Department of Youth Authority*, 28 Cal.
20 4th 299 (2002), the California Supreme Court held that a general release of "all claims and
21 causes of action" was enforceable.  *Id*. at 302, 304.  The release at issue in that case provided
22 that the employee "release[d] ... all claims and causes of action, whether now known or
23 ascertained, or which may hereafter arise or develop as a result of the [claimed injury]."  *Id*. at
24 302.  The release further provided that the release applied "to all known and unanticipated
25 injuries and damages resulting from such accident, and all rights under Sections [*sic*] 1542 of
26 the Civil Code of California are hereby expressly waived."  *Id*. at 302-03.  Absent evidence that
27 the parties intend such general release language to refer only to claims of a particular type, a
28 general release includes *all* claims.  *Id*. at 305.  The court further held that even if the reference

to "all claims and causes of actions" were not clear enough to settle all civil claims, then an express reference to Section 1542 regarding unknown claims would make the release sufficient. *Id*. at 306.

Plaintiffs' reliance on the slip opinion by Judge Wilken in *Kelley v. Pacific Telesis Group*, No. C. 97-02729, attached to Plaintiffs' request for judicial notice, is misplaced.[5] In *Kelley*, the court held that a general release does not apply to wages because California Labor Code § 206.5 prohibits such releases. In light of the Court's finding that the advanced commissions were not wages, neither *Kelley* nor Section 206.5 bars the general releases at issue here from releasing claims relating to the chargebacks.

Here, the release signed by Osborn contained a general release of all known and unknown claims, and a waiver of Section 1542. (Hay Decl., Ex. M.) Osborn read and understood the release. (Hay Decl., Ex. A (Osborn Depo) at 11:24-3, 12:21-13:6, 14:12-13, 18:19-19:15.) The releases signed by other EMC employees similarly included such general releases. (Lane Decl. at ¶ 9.) Therefore, the Court holds that such releases were valid and bar any claims to recover the chargebacks.

## CONCLUSION

Based on the Court's conclusion that the advanced commissions were not wages, and thus the chargebacks were not unlawful or unconscionable, Plaintiffs' first through fifth claims fail as a matter of law. This conclusion excludes the claims relating to leases which are the subject of the parties' Class Action Settlement Regarding "Lease Claims." For the foregoing reasons, the Court GRANTS EMC's motion for summary judgment and DENIES Plaintiffs's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 28, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs' request that the Court take judicial notice of the slip opinion by Judge Wilken in *Kelley v. Pacific Telesis Group*, No. C. 97-02729 is HEREBY GRANTED.